# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| MICHAEL PERKINSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 1:18CV676 |
| | ) |
| ANDREW SAUL, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Michael Perkinson brought this action to obtain review of a final decision of the Commissioner of Social Security[1] denying his claim for supplemental security income benefits. The Court has before it the certified administrative record and cross-motions for judgment.

**I. PROCEDURAL HISTORY**

Plaintiff filed an application for disability benefits on September 15, 2014, alleging a disability onset date of July 4, 2010. (Tr. 205-10.)[2] The application was denied initially and upon reconsideration. (*Id.* at 134-37, 141-45.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 149-51.) After a hearing, the ALJ determined on

---

[1] Andrew Saul was confirmed as the Commissioner of Social Security on June 4, 2019, and was sworn in on June 17, 2019. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew Saul should be substituted for Nancy A. Berryhill as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 405(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Transcript citations refer to the Administrative Transcript of Record filed electronically with the Commissioner's Answer. (Docket Entry 9.)

September 15, 2017 that Plaintiff was not disabled under the Act. (*Id.* at 22-35.) On June 14, 2018, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (*Id.* at 12-17.)

## II. STANDARD FOR REVIEW

The scope of judicial review of the Commissioner's final decision is specific and narrow. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). Review is limited to determining if there is substantial evidence in the record to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In reviewing for substantial evidence, the Court does not re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). The issue before the Court is not whether Plaintiff is disabled but whether the finding that he is not disabled is supported by substantial evidence and based upon a correct application of the relevant law. *Id.*

## III. THE ALJ'S DECISION

The ALJ followed the well-established sequential analysis to ascertain whether the claimant is disabled, which is set forth in 20 C.F.R. § 416.920. *See Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999).[3] The ALJ determined at step one that Plaintiff had not engaged in substantial gainful activity since the application date of August 29, 2014.

---

[3] "The Commissioner uses a five-step process to evaluate disability claims." *Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012) (citing 20 C.F.R. § 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to his [or her] past relevant work; and (5) if not, could perform any other work in the national economy." *Id.* A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. *Id.*

(Tr. 24.) The ALJ next found the following severe impairments at step two: major joint dysfunction, spine disorder, depressive disorders, anxiety disorders, and substance addiction disorder. (*Id.*) At step three, the ALJ found that Plaintiff did not have an impairment, or combination of impairments, listed in, or medically equal to, one listed in Appendix 1. (*Id.* at 24-26.)

The ALJ next set forth Plaintiff's Residual Functional Capacity[4] ("RFC") and determined that he could perform medium work except that

> [Plaintiff] can lift and carry 50 pounds occasionally and 25 pounds frequently; stand and walk in combination six hours in an eight-hour workday; sit six hours in an eight-hour workday; occasionally push and pull with the upper and lower extremities; occasionally climb; frequently balance; occasionally stoop, kneel, crouch, and crawl; occasionally reach overhead with the left upper extremity; and frequently but not constantly handle and finger bilaterally. [Plaintiff] should avoid concentrated exposure to vibration, and hazards such as unguarded machinery and unprotected heights. [Plaintiff] can perform simple, routine tasks. [Plaintiff] can have brief and superficial contact with coworkers and supervisors and no interaction with the general public. [Plaintiff] cannot perform work at a fast or production pace (work should be goal-oriented).

---

[4] The "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." *Hines v. Barnhart*, 453 F.3d 559, 561 (4th Cir. 2006). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." *Hall v. Harris*, 658 F.2d 260, 265 (4th Cir. 1981). The "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." *Hines*, 453 F.3d at 562-63. An ALJ need not discuss every piece of evidence in determining the RFC. *See, e.g., Matney v. Colvin*, No. 1:09-CV-229, 2013 WL 1788590, *3 (M.D.N.C. April 26, 2013) (unpublished). What is required is "an accurate and logical bridge from the evidence to [the] conclusion." *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000); *Matney*, 2013 WL 1788590, at *3.

(*Id.* at 26.) At the fourth step, the ALJ determined that Plaintiff has no past relevant work. (*Id.* at 33.) Last, at step five, the ALJ concluded that there were jobs in the national economy that Plaintiff could perform. (*Id.* at 33-34.)

**IV. ISSUES AND ANALYSIS**

Plaintiff's sole issue on appeal is that the ALJ's decision is not supported by substantial evidence because of the evidence submitted to the Appeals Council and included in the record before this Court. (Docket Entry 14 at 9-20.) For the following reasons, this argument lacks merit.

> **1. The Evidence Submitted to the Appeals Council Does Not Warrant Remand.**

Plaintiff argues that remand is necessary because the evidence submitted to the Appeals Council constitutes new and material evidence that is likely to change the outcome of the ALJ's decision. (*Id.*) The administrative scheme for handling Social Security claims permits the claimant to offer evidence in support of the claim initially to the ALJ. Once the ALJ renders a decision, the claimant is permitted to submit additional evidence to the Appeals Council as part of the process for requesting review of an adverse ALJ decision, and the Appeals Council must consider evidence submitted by a claimant with the request for review if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision. *Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 953 F.2d 93, 95-96 (4th Cir. 1991). Evidence is new if it is not duplicative or cumulative. *See id.*, 953 F.2d at 96. Evidence is material if there is a reasonable probability that the additional evidence would

4

change the outcome of the decision.[5] 20 C.F.R. § 416.1470(a)(5) (2017). When the Appeals Council decides to deny review, it need not provide any explanation of its reasoning. *Meyer*, 662 F.3d at 705. "In evaluating whether remand is necessary, we view the administrative record as a whole, including the new evidence, to determine whether substantial evidence supports the Commissioner's decision." *Parham v. Comm'r of Soc. Sec.*, 627 F. App'x 233, 233 (4th Cir. 2015) (unpublished) (citing *Wilkins*, 953 F.2d at 96).

Here, Plaintiff submitted additional evidence—records from Ms. Donna A. Mansour, Dr. Edward Forero, and the State of North Carolina Department of Health and Human Services ("NCDHHS")—and the Appeals Council determined that the information did "not show a reasonable probability that it would change the outcome of the [ALJ's] decision." (Tr. 13.) The Appeals Council therefore found no basis for granting Plaintiff's request for review and did not exhibit[6] the additional information into the record.[7] (*Id.* at 12-13.) Despite

---

[5] Long-standing Fourth Circuit law defined "material" as a reasonable possibility the new evidence would have changed the outcome of the case. *See Meyer v. Astrue*, 662 F.3d 700, 705 (4th Cir. 2011). However, the new version of Section 416.1470 increases a claimant's burden from showing a reasonable possibility to a reasonable probability, and make the obligation to show a reasonable probability of a different outcome an additional requirement to showing materiality. The new version of the regulation applies here as it was effective January 17, 2017, with compliance by claimants required by May 1, 2017, *see Ensuring Program Uniformity at the Hearing and Appeals Council Levels of the Administrative Review Process*, 81 Fed. Reg. 90987-01, 90987, 2016 WL 7242991 (Dec. 16, 2016).

[6] The additional evidence has been included in the Administrative Record before this Court. (Tr. 41-69.)

[7] Where, as here, the Appeals Council declines to accept additional evidence, some courts in the Fourth Circuit consider an appeal of that issue under "sentence six" of 42 U.S.C. § 405(g), rather than "sentence four." *See, e.g.*, *Barts v. Colvin*, No. 4:13-CV-23, 2014 WL 3661097, *9 n.6 (W.D.Va. July 22, 2014) (unpublished) (collecting cases). As explained above, the sentence four factors are that the evidence must be (a) new; (b) material; and (c) relate to the period on or before the date of the ALJ's decision. *Wilkins*, 953 F.2d at 95-96. The sentence six factors are that the evidence (a) must be relevant to the determination of disability at the time the application was initially filed; (b) the evidence

5

Plaintiff's arguments to the contrary, the Appeals Council did not err in denying review because the evidence fails to demonstrate that it would have changed the outcome of Plaintiff's disability determination. *Meyer*, 662 F.3d at 705.

### A. The NCDHHS Medicaid Determination

Under the regulations in effect when Plaintiff's claim was filed, disability decisions by other governmental agencies are not binding on the SSA. 20 C.F.R. § 416.904. Nevertheless, such disability determinations are "entitled to consideration by the Secretary." *DeLoatche v. Heckler*, 715 F.2d 148, 150 n.1 (4th Cir. 1983); *Watson v. Astrue*, No. 5:08–CV-553-FL, 2009 WL 2423967, at *2 (E.D.N.C. Aug. 6, 2009) (unpublished). SSR 06-03p identifies Medicaid decisions as "other-agency evidence" and specifies that "the adjudicator should explain the consideration given to these decisions in the notice of decision for hearing cases and in the case record for initial and reconsideration cases."[8] SSR 06-03p, 2006 WL 2329939, at *7 (Aug. 9, 2006).

---

must be material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before her; (c) there must be good cause as to why the claimant failed to submit the evidence when the claim was before the Commissioner; and (d) the claimant must make at least a general showing of the nature of the newly submitted evidence to the reviewing court. *See, e.g.*, *Doll–Carpenter v. Comm'r*, 4:11-CV-28, 2012 WL 5464956, at *4 (W.D.Va. May 7, 2012) (unpublished) (citing *Miller v. Barnhart*, 64 Fed. App'x. 858, 859 (4th Cir. 2003). The Court need not resolve the issue of which sentence applies here because, given their overlapping nature—particularly with respect to materiality—the result remains the same. *Barts*, 2014 WL 3661097, at *9 n.6 (unpublished) (finding that "the additional evidence submitted by [plaintiff] to the Appeals Council [was] not material, a standard applicable under both sentence four and sentence six," thus the court "need not further address which sentence would apply" had the case resulted in remand).

[8] For claims filed after March 27, 2017, this regulation has been amended and Social Security Ruling 06-03p has been rescinded. The new regulation provides that the Social Security Administration "will not provide any analysis in our determination or decision about a decision made by any other governmental agency or a nongovernmental entity about whether you are disabled, blind, employable,

Here, the Medicaid Determination is not material. As explained, not only must evidence submitted to the Appeals Council be new and related to the time in question, it must also be material. However, the Medicaid Determination submitted to the Appeals Council is not material because there is not a reasonable probability that the additional evidence would change the outcome of the decision. Specifically, the Medicaid Determination does not indicate with any meaningful degree of specificity the rationale for its decision. (Tr. 41.) Also, the medical evaluations submitted with the Medicaid Determination provide notable inconsistencies with the Medicaid Determination itself.

First, the Medicaid Determination lists the "primary" diagnosis as "fracture of upper limb," but Plaintiff did not allege, and was not diagnosed with, any existing upper limb fracture. (*See* Tr. 41, 45, 49-50, 60-61.) Second, the form also lists "Bipolar and Related Disorders" as an "other" diagnosis, but Plaintiff did not allege, and was not diagnosed with, bipolar and related disorders within the evidence submitted to the NCDHHS. (*See id.* at 41, 45, 68.) Third, the form suggested that "Vocational Rule . . . 201.12 . . . [was] used as a framework for decision" and that no referral to a vocational resource was necessary. (*Id.* at 41.) Rule 201.12 of the Medical-Vocational Guidelines only applies where a claimant is limited to a *sedentary* RFC. 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.12. However, the underlying medical evaluation for the Medicaid Determination found that Plaintiff was capable of a "Light RFC."

---

or entitled to any benefits." 20 C.F.R. § 416.904; 82 Fed. Reg. 5844, 5845 (Jan. 18, 2017). The claims in the present case were filed before March 27, 2017, and the Court has therefore analyzed Plaintiff's claims pursuant to the guidance set out above. *See, e.g.*, *Barroso v. Berryhill*, No. 1:16CV1224, 2018 WL 1115725, at *3 n.5 (M.D.N.C. Feb. 27, 2018) (unpublished) (noting that SSR 06-03p has been rescinded but only for those claims filed after March 27, 2017) (citations, quotations omitted), *report and Recommendation adopted by* Slip Op. (M.D.N.C. Mar. 14, 2018) (unpublished).

(Tr. 50.) Additionally, the form's space for "rationale" is blank (*id.* at 41), casting uncertainty as to the discrepancies discussed above. Under these circumstances, the conclusory statement from the Medicaid Determination that Plaintiff is "[u]nder a disability since 09/16" (*id.*) does not create a "reasonable probability" that the ALJ's decision would have been altered.

### B. The Medical Evaluations and Psychological Assessment

The undersigned further concludes that the medical evidence purportedly underpinning the Medicaid Determination also casts no reasonable probability that the ALJ's decision would have been altered. Plaintiff points to this evidence—two medical evaluations and a psychological assessment—to supports his argument for remand. Dr. Forero evaluated Plaintiff on April 17, 2017, less than five days before his hearing before the ALJ. (Tr. 57-61.) Dr. Forero observed that Plaintiff had "[l]imited use of [his] arm" from a left rotator cuff tendon tear that had not responded to physical therapy. (*Id.* at 60.) Plaintiff also had mildly to moderately symptomatic permanent injury to his left ulnar nerve. (*Id.*) He did not need any assistive device for ambulation, yet Plaintiff was unable to walk a block at a reasonable pace, was unable to climb a few steps at a reasonable pace, and did not have full use of his upper extremity for carrying objects. (*Id.* at 61.) He was also moderately impaired in his ability to stand, move about, lift, carry, handle objects, and travel. (*Id.*)

Dr. Colby Benevides, a medical consultant, completed a medical statement on June 7, 2017, in reference to Plaintiff's Medicaid application. (*Id.* at 49-50.) Dr. Benevides summarized medical evidence, including the findings of Dr. Forero, and opined that Plaintiff would be capable of light work with occasional pushing and pulling with the left upper extremity. (*Id.* at 50.) Plaintiff would also be limited to occasional climbing of ramps, stairs,

8

ladders, ropes, and scaffolds, and occasional stooping, crouching, and crawling. (*Id.*) Plaintiff could occasionally perform work overhead with his left upper extremity and he should avoid concentrated exposure to hazards. (*Id.*) The medical evaluation also indicates in handwritten notation that Plaintiff would be "limited to 4 hours in an 8-hour workday." (*Id.*)

The Court first notes that it is unclear as to the extent of the role of the handwritten notation regarding Dr. Benevides's findings. Indeed, both Plaintiff and the Commissioner assert separate interpretations as to this finding. Plaintiff suggests that the handwritten portion is indicative that he would only be capable of sustaining work activities for four hours in an eight-hour workday. (Docket Entry 14 at 16.) On the other hand, the Commissioner argues that the handwritten note must modify only the last limitation in Plaintiff's RFC; that is, the exposure to hazards would be limited to four hours in an eight-hour workday. (Docket Entry 16 at 12.) While the parties disagree as to the interpretation of this notation, the Court finds that the evidence provides no meaningful degree of reasonable probability that the ALJ's decision would have been changed. First, it is unclear to whom one would attribute the handwritten portion of the evaluation. Second, the handwritten portion standing alone is inconsistent with the type-written medical evidence reviewed by Dr. Benevides. Moreover, some portions of the treatment notes reviewed by Dr. Benevides were part of the same medical evidence before the ALJ. (*See e.g.*, Tr: 50 (medical sources reviewed by Dr. Benevides include evidence from podiatrist); Tr. 22 (podiatrist record submitted "subsequent to the hearing" and "considered" by the ALJ).)

Beyond the unattributed handwritten notation, the findings of both Drs. Benevides and Forero do not create a reasonable probability of an alternative outcome than that of the

9

ALJ because the ALJ accounted for the physical limitations noted by both physicians. The ALJ did limit Plaintiff to a reduced range of "medium work" in the RFC (Tr. 26), but at step 5, the ALJ further found that even if Plaintiff's RFC "w[as] changed to lifting and carrying 20 pounds occasionally and 10 pounds frequently, with all the other restrictions, [Plaintiff] still would be able to perform" work existing in significant numbers in the national economy. (*Id.* at 34.) The "other restrictions" originally listed in the RFC to which the ALJ referred included: occasional pushing and pulling with all extremities; occasional climbing, stooping, kneeling, crouching, and crawling; occasional overhead reaching with left upper extremity, and avoidance of concentrated exposure to hazards. (*Id.* at 26.) Given the similarities between the ALJ's findings and those of Drs. Forero and Benevides, there is not a reasonable probability to believe that it would change the outcome of the decision.

Overall, the longitudinal record before both the ALJ and Appeals Counsel in this case demonstrates that while Plaintiff had limitations attendant to his severe impairments, such limitations did not preclude all work activity. As the ALJ pointed out, even Plaintiff's medical records suggested that he performed some construction equipment repair work during the relevant period despite his impairments, and ceased working at one point because of his wife's mental health issues. (*See* Tr. 31; 556 (Plaintiff reporting "he works on heavy duty machines"); 563 (Plaintiff "working without restrictions"); 575 (Plaintiff "let his job [because wife] can't bear being away from him")). Moreover, albeit limited by his left hand and foot issues, Plaintiff reported that he could perform daily activities, including bathing, dressing, cooking, and maintaining household chores. (*Id.* at 28, 533.) All of this provides substantial evidence regarding the findings of both the Appeals Council and the ALJ that Plaintiff is not disabled.

10

Likewise, the findings of Ms. Mansour casts no reasonable probability of an alternative outcome in this matter. Ms. Mansour performed a psychological assessment of Plaintiff on May 23, 2017. (*Id.* at 62-69.) Plaintiff presented himself as friendly and cooperative with no deficits in posture and gait. (*Id.* at 63.) After taking Plaintiff's reported history and alleged issues with depression and anxiety (*id.* at 63-65), Ms. Mansour completed a mental status examination. (*Id.* at 65-68.) Plaintiff's speech was relevant, coherent, and audible. (*Id.* at 65.) He reported that his typical mood was angry and depressed related to pain. (*Id.*) Ms. Mansour observed that Plaintiff was "within normal limits" in every area of cognitive functioning. (*Id.* at 66-68.) A gross estimate of Plaintiff's intellectual functioning was average. (*Id.* at 68.)

Ms. Mansour listed depression, post-traumatic stress disorder, and anxiety as possible diagnoses. (*Id.*) Under the heading "claimant's overall ability," Ms. Mansour noted that Plaintiff reported difficulty that could cause issues with sustaining attention to perform a simple and repetitive task, relating to fellow workers and supervisors, and tolerating stress and pressures of work. (*Id.*) However, Ms. Mansour offered no opinion based on her clinical findings suggesting that Plaintiff was unable to perform some level of work activity on a sustained basis, notwithstanding his impairments. To the contrary, an unsigned medical evaluation (included in the Medicaid Determination) relying on Ms. Mansour's report found that Plaintiff could perform "[simple, routine, and repetitive tasks] in a low social environment and in a low demand setting." (*Id.* at 48, 62-69.) Again, the RFC (and alternative step 5 RFC finding) formulated by the ALJ accounts for these mental limitations. (*Id.* at 26, 34.) For example, the ALJ limited Plaintiff to simple and routine tasks, only brief and superficial contact with coworkers and supervisors, no public interaction, and only goal-oriented work with no

fast or production pace. (*Id.* at 26.) Thus, even considering Ms. Mansour's report and the corresponding unsigned medical evaluation, there is no reasonable probability that the outcome would change here.

Plaintiff's arguments to the contrary are not persuasive. Plaintiff points to a prior decision from this district in which a Medicaid award presented in the first instance to the Appeals Council warranted remand, and contends the same logic applies here. (Docket Entry 14 at 19 *referencing Reap v. Berryhill*, No. 1:16CV1139, 2018 WL 1399333, at *3 (M.D.N.C. Mar. 19, 2018) (Osteen, J.).) That case, however, is distinct from this one because the regulations have changed since *Reap* was decided. The Appeals Council in *Reap* made its decision in July of 2016 (Case Number 1:16cv1139, Tr. 1), when there only needed to be a "reasonable *possibility*" of a different outcome for new evidence to be deemed material, whereas now—as discussed in detail above—that evidence must demonstrate a "reasonable *probability*." As explained, there is not a "reasonable probability" here that a remand for consideration of the Medicaid award and medical evaluations would reach a different result.

Moreover, since *Reap* was decided, the Fourth Circuit has clarified the duties of both the ALJ and the Appeals Council when it comes to Medicaid decisions. In *Woods v. Berryhill*, 888 F.3d 686 (4th Cir. 2018), the Fourth Circuit concluded that an ALJ should give substantial weight to a Medicaid decision unless the record clearly demonstrates otherwise. *Id.* at 692. However, *Woods* did not address how a court should address a Medicaid award submitted to the Appeals Council in the first instance.

In *Williams v. Berryhill*, 729 F. App'x 262, 263 (4th Cir. 2018), however, the Fourth Circuit responded to a claimant's request for a remand based upon the claimant's submission

12

of a favorable Medicaid award to the Appeals Council. The Fourth Circuit did not remand as in *Woods*. Instead, it denied any such request, concluding that the Medicaid "decision does not render the ALJ's decision unsupported by substantial evidence." *Id.* (*citing Meyer v. Astrue*, 662 F.3d 700, 707 (4th Cir. 2011).)

Here, the Medicaid Determination was never before the ALJ and so consequently, the ALJ could not have erred for having failed to consider it. *Woods* is therefore inapplicable here. Beyond this, the Medicaid Determination does not render the ALJ's decision unsupported by substantial evidence, nor does it present a reasonable probability of changing the outcome of this case. The Medicaid Determination cannot be considered relevant evidence undermining the ALJ's decision here because it contains unexplained discrepancies. Moreover, the evidence purportedly underlying that Medicaid Determination is consistent with the ALJ's finding that Plaintiff would not be disabled, even if he were found capable of performing only a reduced range of light work as noted in the step 5 alternative finding. (Tr. 34.) Consequently, Plaintiff's argument fails.

### V. CONCLUSION

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is legally correct and supported by substantial evidence. Accordingly, this Court **RECOMMENDS** that Plaintiff's Motion for Judgment on the Pleadings (Docket Entry 13) be **DENIED**, Defendant's Motion for Judgment on the Pleadings (Docket Entry 15) be **GRANTED**, and the final decision of the Commissioner be upheld.

_____
Joe L. Webster
United States Magistrate Judge

July 30, 2019
Durham, North Carolina

14